

FILED

2018 APR 23 PM 2: 50

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

DENISE M. MARTIN,
Pending Administrator,
ESTATE OF MARY E. MARTIN,
Deceased
25519 North 49th Dr.
Phoenix, AZ 85083

and

DENISE MARTIN, as an Individual,

PLAINTIFFS,

vs.

MERCY HEALTH PARTNERS,
ST. ANNE'S HOSPITAL,
c/o Steven C. Hahn
Statutory Agent
2409 Cherry St., MOB1, 4th floor
Toledo, Ohio 43608

and

FRANCISCAN CARE CENTER, et al.,
c/o CT CORPORATION
Statutory Agent
4400 Easton Commons
Suite 125
Columbus, Ohio 43219

and

Case No.

**3: 18 CV 927**

Judge:

**JUDGE HELMICK**

MAG. JUDGE JAMES R. KNEPP II

**COMPLAINT FOR DAMAGES
WITH JURY DEMAND
ENDORSED HEREIN**

VIRGINIA M. WALL  (0041270)
Law Office of Virginia Wall
2828 W. Central Ave., Suite 7
Toledo, Ohio 43606
419-377-8222
vmwall2@yahoo.com
Attorney for Plaintiffs

TERRANCE K. DAVIS,
Shumaker, Loop, & Kendrick
Attorney, Franciscan Care Ctr.
North Courthouse Square Way
1000 Jackson St.
Toledo, OH 43624
419-241-9000

CT CORPORATION
c/o Statutory Agent
4400 Easton Commons Way, Suite 12
Columbus, Ohio 43219

and

JOHN/JANE DOE(S)
Name unknown
Address Unknown

and

MARGARET WEISENBURGER, Esq.
In Her Individual and Official Capacity
Virgil Clark and Associates
617 Miami St.,
Toledo, Ohio 43615

and

GEORGE BLOSSOM, MD
Franciscan Care Center
4111 N. Holland Sylvania Rd.
Sylvania, Ohio 43560

and

SHAKIL A. KAHN, MD
St. Anne's Hospital
Mercy Health Partners
3404 W. Sylvania Rd.
Toledo, Ohio 43623

and

JENNIFER L. RUSSELL, RN
St. Anne's Hospital
Mercy Health Partners
3404 W. Sylvania Rd.
Toledo, Ohio 43623

and

2.

JAMES R. PATRICK MD
In His Official Capacity
Lucas County Coroner
2595 Arlington Ave.
Toledo, Ohio 43614

and

DIANE M. SCALA-BARNETT, MD
In Her Official Capacity
Chief Deputy Lucas County Coroner
2595 Arlington Ave.
Toledo, Ohio 43614

and

ROBERT B. FORNEY, Jr., Ph.D.
Director, Toxicology Laboratory
In His Official Capacity
Lucas County Coroner's Office
2595 Arlington Ave.
Toledo, Ohio 43614

and

THERESE MERCHANT
Investigator
In Her Official Capacity
Lucas County Coroner's Office
2595 Arlington Ave.
Toledo, Ohio 43614

JOHN BORRELL, ESQ.
Assistant Co. Prosecutor, Civil Div.
700 Adams St., 2nd Floor
Toledo, Ohio 43604
419-213-2001
Attorney for Coroner

JOHN BORRELL, ESQ.
Assistant Co. Prosecutor, Civil Div.
700 Adams St., 2nd Floor
Toledo, Ohio 43604
Attorney for Coroner's Office

JOHN BORRELL, ESQ.
Assistant Co. Prosecutor, Civil Div.
700 Adams St., 2nd Floor
Toledo, Ohio 43604
Attorney for Coroner's Office

JOHN BORRELL, ESQ.
Assistant Co. Prosecutor, Civil Div.
700 Adams St., 2nd Floor
Toledo, Ohio 43604
Attorney for Coroner's Office

### DEFENDANTS.

Despite the exercise of due diligence, Plaintiff has been unable to ascertain the exact names of certain agents and employees of Defendants.  Upon discovery of the true and accurate names of the parties, an amended compliant will be filed. All John/Jane Does are referred to herein as "agents and employees of Defendants".

Decedent, Mary E. Martin, died on April 21, 2016, and was domiciled in Lucas County, Ohio.

3.

On February 29, 2012, Attorney Margaret Weisenbuger was appointed Guardian for Mary Martin, in Lucas Co. Probate Court, Case No. 2011 GDN 001385. On September 15, 2016, Margaret Weisenberger, was appointed Administrator, Estate of Mary Martin, in Lucas Co. Probate Court, Case No. 2016 EST 000819.  On April 20, 2018, Denise Martin, Executor of Mary Martin's will, filed a "Petition for Naming Special Administrator for Collection of Judgment, Due to Conflict of Current Administrator" (Ms. Weisenberger), named as a Defendent herein, in Lucas Co. Probate Court, Case No. 2016 EST 000819.

## JURISDICTION AND VENUE

This Honorable Court has jurisdiction over the above parties because each either resides in/or does/or has done business within this judicial district and participated in the actions complained of herein at all times relevant to this cause of action.

This Court has jurisdiction pursuant to 28 U.S.C.1331, 1367 for Plaintiff's 42 USC 1983 claim. Venue is proper under 28 U.S.C. 1391(b). The parties reside in this judicial district, or do business within this judicial district, and/or the events giving rise to Federal claims asserted herein occurred in this judicial district as well.  This Court has jurisdiction for the 42 USC 1983 claim under 28 USC 1343(a)(1-3) and for 42 USC 1985 under 28 USC 1343(a)(1-2).

This court has supplemental jurisdiction for Plaintiff's common law claims of Intentional Infliction of Emotional Distress and Wrongful Death, Obstruction of Justice, under 28 USC 1367.

4.

<u>COMPLAINT FOR DAMAGES</u>

<u>UNDER 4 USC 1983 - DEPRIVATION OF RIGHTS</u>

Now comes Plaintiff, Denise Martin, on her behalf and on behalf of her Mother,

Mary E. Martin, herewith files the above cause of action  under 42 USC 1983, for

violations of their Equal Protection rights pursuant to the law by a conspiracy of

individuals acting under Color of Law to deprive Mary Martin of her Liberty and

Property Rights, and depriving Denise Martin of her rights to companionship, love,

memories of Mary Martin and all that comes with being her Mother's child, as well as

her inheritance and related property rights, namely for Deprivation of Federal Civil and

Human Rilghts, protected by First Amendment to the U.S. Constitution.

<u>STATEMENT OF FACTS RELEVANT TO ALL CAUSES OF ACTION</u>

**COUNT  I**
**42 U.S.C. 1983**
**DENIAL OF PROCESS RIGHTS**

1.  On or about the morning of April 5, 2016, Plaintiff, Denise Martin (hereinafter

referred to as "Denise"), daughter of and, for the past 6 years, primary caregiver for

Mary E. Martin (hereinafter referred to also as "Mary", "Mrs. Martin" or "Mother") was in

Mary's home, where she aso lived, when she heard Mary scream from the hallway.

Denise found her on the floor, sitting against the wall.  Denise and a part-time

caregiver, who had just arrived, deterermined Mary needed medical attention;

2.  Mary was transported to St. Anne's Hospital, Emergency Department,

Toledo, Ohio, where she was examined, tested, diagnosed with a broken hip, admitted

to the hospital, and scheduled for surgery.  The evening of April 6, 2016, Mary

underwent surgery.  Soon after, the surgeon, Van Boggus, MD, met with Denise and

her brother, Jeff Martin, reported Mother's surgery "went well" and she would be "fine";

3.   On April 7, 2016, Margaret Weisenburger, acting as Mary's Guardian, came

to the hospital, met with the head nurse and staff, without Denise present, despite the

fact Denise was Mary's Durable Power of Attorney for Healthcare, had knowledge of

Mary's health history, medications, doctors, diet, allergies, moods, needs, wants,

desires, and so forth;

4.   On the afternoon of April 8, 2016,  Ms. Weisenburger was at the hospital,

talking with staff and arranging a plan for Mary to be discharged early that evening, to

be taken by hospital shuttle to a care facility for a temporary rehabilitation after her

surgery;

5.   That afternoon, Mary was unhooked from her IV of a saline drip, but was not

given food that evening.  Near Midnight, April 8, 2016, a shuttle finally arrived and Mary

was transported to Franciscan Care Center (hereinafter referred to as "FCC") in

Sylvania, Ohio, but arrived too late to have any food.  It was necessary for Mary to eat

frequent small amounts of food, due to a prior surgery she had years ago for

esophogial cancer;

6.   The next morning, April 9, 2016, two of Mary's daughters, Denise's sisters,

along with Ms. Weisenburger, arrived together at FCC to see Mary.   Ms.

Weisenberger insisted on meeting with all three sisters in Mary's room, to set up a

visiting schedule, but there was an argument about a timetable, which upset Mary.

So, Ms. Weisenburger said the daughters could be there anytime they wanted;

7.   In the afternoon of April 9, 2016, after the others left, a FCC staffperson

came in with food, but not the dietary type or consistency Mary was able to eat.  So,

Denise spoke with the chef and gave him a list of what Mary could eat, to which he

happily agreed, and he told Denise she was free to bring food for her Mother as well;

6.

Denise also observed Mother's room was dirty, smelled of urine, and staff were not very friendly or accomodating to Mary. Also, Mary kept telling Denise she wanted to go home;

8.   The next day, April 10, 2016, when things did not approve, Denise called Mary's surgeon, they discussed the situation and he said Mary should go home. So, Denise met meet with staff: Jill Schlievert, FCC Administrator, Beth Riling, Director of Nursing, and Amanda Sager, Social Worker, and they made a plan for Mary to go home in Two (2) days. Soon after, Mrs. Weisenburger arrived at FCC, met with the same staff members, told them Mary would be there "indefinitely", despite her wishes to go home;

9.   Also, at that time, Ms. Weisenburger told the same staff she was taking over, was the one in charge of Mary, directed them Denise was not to have anysay thereafter in Mrs. Martin's medical care, contrary to Mrs. Martin's written wishes. She told them Denise was a "nobody", could not make any decisions on behalf of Mary, and was to be carefully monitored so as not interfere with Mary's care. Ms. Weisenburger did inquire of Denise what Mary's regular medications were, so they could be ordered;

10.  Ms. Weisenberger took charge, despite Denise being Mary's caregiver for years, who knew her Mother's medical needs, medications, health history, allergies, foods, moods, wants and desires, and contrary to Mary's wishes and appointment of Denise as her Durable Power of Attorney for Healthcare (POA) in October, 2009. Mary did not consent to removal of Denise, no notice was given to her, nor any Probate Court action commenced to remove Denise, no hearing held, and no Court Order made, all in violation of Mrs. Martin's Civil and Due Process Rights;

7.

11.  Denise requested an X-ray of her Mother's right wrist due to bruising and swelling, which was done, but she was not given results. She also requested Mary's former physician, Dr. Payton, an attending doctor at FCC, treat Mary, instead of Dr. Blossom who was assigned, but Ms. Weisenburger would not agree;

12.  The next day, April 11, 2018, Denise asked staff about Mother's regular medications, learned they had been ordered but not delivered. After further questions, the staff finally admitted they had some back-up ones and started giving them to Mary. But, Mary was given the wrong blood pressure meds, force-fed medications, had glaucoma drops put in the wrong eye, was not kept hydrated, not kept elevated, as required due to her bout 6 years prior with esophaegal cancer, for her to properly breathe and not aspirate;

13.  The Guardian and FCC staff had at least 2 meetings, on April 12 and 14, 2018, with a few family members present, but Denise was not invited nor notified. When she discovered the April 14th meeting, Denise went in, was told she was "a nobody" by Ms. Weisenburger, could not participate, and if she did not leave, security would be called.

14.  Denise pleaded for her Mother, advocated for improvement in her care, addressed her basic needs not being met, failure to treat her properly, and advocated for improvement in her care. After Denise left, a plan was finally made for Mrs. Martin to return home, although her release was postponed a couple of times for several days, by Ms. Weisenburger, with weak excuses as to why she could not go home.

15.  On April 18, 2018, when Mrs. Martin was finally due to go home, Denise arrived at 8AM to find her Mother lying flat, dentures hanging out of her mouth, with a soft dark matter in her mouth, and breathing with great difficulty;

15.  Denise called for help to get Mary up, and asked for a doctor.  Then, Ms. Weisenburger arrived, and Denise again stated her Mother needed a Doctor.  Ms. Weisenburger responded that no doctor was available on the day someone is scheduled to leave, then left without assisting Mary;

16.  A staff member returned with applesauce which she forced into Mary's mouth stating that's the way she gave Mrs. Martin her medications.  Shortly thereafter, Denise noticed her mother stopped breathing.  Denise yelled for staff, who came, looked at Mary, said she was ok, then left the room.  Denise went after her, said Mary needed CPR.  Staff went out of the room to find a defibrillator, while Denise attempted CPR on her mother.  When two members of the staff returned, Denise was pushed out of the room, but saw them with a defibrillator and they were having difficulty using it;

17.  Denise called paramedics, who soon arrived, worked on Mary until they were able to find a pulse, then transported her to Emergency at St. Anne's Hospital, where hospital staff worked to keep her alive.  Mary was then admitted to Intensive Care, where Dr. Hussain asked Denise what had happened, because he noted Mary just had a broken hip and had been fine. Denise told him of the struggle of getting Mary out of rehabilitation where she had been kept against her will and mistreated. Shortly after admission, Ms. Weisenburger arrived, met with Doctors privately, then met with other staff, and did not allowDenise to participate;

18.  On April 19, 2018,  Ms. Weisenburger scheduled a family meeting for the next day.  On April 20, 2018 at 3PM, a family meeting was held where Ms. Weisenburger asked who wanted their Mother unpluged from life support. Everyone raised their hand except Denise, who stated Mary was scheduled for a CAT scan the next morning, to detect if she had brain activity.

9.

19.  Denise said it should be done, since their Mother stated in her Living Will that Two (2) Doctors needed to confirm there was no chance for recovery, before she could be unplugged.  Ms. Weisenburger asked who wanted Mary to have a CAT scan and no one raised their hand, except Denise;

20.  Beginning at 4:25PM that day, Mary Martin was given 4 mg. of Morphine every 5 minutes, PRN, by injection, ordered by Shakil A. Kahn, MD and administered by Patricia  Welling, RN, a by medication to which she was allergic, which had been written in all her medical records.   As a result, at 11AM on April 21, 2018, at St. Anne's Hospital, Toledo, Ohio, Mary E.  Martin died.  (See Affidavit of Merit attached hereto and incorporated herein as Plaintiff's Exhibit "A").

21.  As an approximate and direct result of actions and inactions by Margaret Weisenburger, Guardian for Mary E. Martin, who was appointed to protect her, Mary Martin was subjected to an abuse of the guardianship process, was deprived of her Civil Liberty and Property Rights, had her POA for Healthcare and Living Will summarily terminated without Due Process of Law, was held against her will, drugged with opiods, rendering her helpless and unable communicate, and finally deprived of her life.

22.  As a result of the violations of Mary Martin's civil liberties, Plaintiff, Estate of Mary E. Martin is damaged in an amount in excess of $25,000;

COUNT II
VIOLATION OF NURSING HOME RIGHTS
42 USC 1395 et al.

23.   Plaintiff incorporates the allegations stated in the first claim as if fully rewritten herein and states this action is being brought for Violation of Nursing Home Rights pertain to Mary E. Martin, Decedent;

24.    Defendants, Franciscan Care Center and CT Corporation own and/or operate a nursing home located 4111 Holland Sylvania Rd., Sylvania, Ohio;

23.   On or about and between April 8, 2016 and April 18, 2016, Decedent, Mary Martin, was a resident of Defendant's nursing home and received medical care and treatment while she resided at Franciscan Care Center, Sylvania, Ohio rendered to her by employees and/or agents of Defendants (herein after referred to as "Staff").   The medical care and treatment rendered to Decedent by the employees and/or agents of Defendants was negligent and was in violation of State and Federal Regulations;

24.   That Defendants are liable and responsible for the negligent acts of its agents and employees pursuant to the doctrine of Respondent Superior and/or Master/Servant doctrine;

25.   That at all times relevant, whilen Mary Martin was a resident at Franciscan Care Center, she was not given proper medical care as previously set and was subjected to numerous violations of regulations, some of which are as follows:  Staff did not get Mary up to walk which is essential to prevent blood clots, nor did they allow her daughter, Denise, to do so;  Staff did not turn my Maryto prevent bed sores;  Staff refused to supply a drip line of saline when Mary Martin was dehydrated, and stated it would not be sanitary to be in a wet diaper all day because they did not have the staff to change her; Staff admitted to experimenting with medications contrary to Dr. Hussain's orders from St. Anne's to keep Mary on the same medications she was on when she was admitted and discharged after surgery;  Staff did not provide a sponge bath or shampoo hair for Mary during the 10 days she was there;  Staff not trained on how to use defibrilaters; Mary given drugs she is allergic to as stated in her file: namely hydrolazine, morphine; Staff did not apply her patch in the correct spot.

11.

27.  Further, Mary's right hand was swollen and bruised, indicating physical restraints may have been used on Mary; Staff did not put ice packs on Mary's hip incision as was directed by in pst-surgery orders;  Dr. Blossom perscribed psychotropic drugs such as Depokote, which was not necessary ad which Mary could not tolerate, and he perscribed a full dose of Atavan, 2x/day, twice the amount Mary was prescribed after surgery, which amount her daughter advised Staff Mary could not tolerate.

28.  As a result of negligent care and mistreatment rendered to Decedent, and violations of Nursing Home regulations, Plaintiff was damaaged in the amount in excess of $25,000.00.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

29.  Plaintiff incorporated the allegations contained in the first and second causes of action as if fully rewritten herein and states this action is being brought on behalf of the Estate Mary Martin;

30.  Mary Martin suffered great emotional distress as a result of aforementioned violations and mistreatment, which were extreme and outrageous, intentionally inflicted upon her by Defendant Margaret Weisenburger, Defendant Franciscan Care Center, its agents and employees, and Defendant St. Anne's Hospital;

31.  Plaintiff, Denise Martin also suffered and continues to suffer severe emotional distress from the actions of these Defendant's toward her directly and intentionally, and as a consequence of watching her Mother's accute suffering.  She has been diagnosed and is in treatment for P.T.S.D.  (See Affidavit marked as Exhibit "B" attached hereto and incorporated herein).

12.

32.  As a result of the above intentional tortous actions, Plaintiffs have suffered damages in excess of $25,000.00;

COUNT IV
WRONGFUL DEATH

33.  Plaintiffs incorporate the allegations stated in the first, second and third claims as if fully rewitten herein and states this action is being brought on behalf of survivors of the Decedent and the estate of athe decedent and states that they are entitled to any and all wrongful death damages due them under the laws of the State of Ohio, and further for reasonable exxpenses for the funeral and burial of Decedent;

34.  This Count is against Defendants, George Blossom, MD; Franciscan Care Center and Mercy Health Partners, each of their agents and employees; Defendants, Shakil a Khan, MD and Jennifer L. Russell, RN; and Defendant,Margaret Weisenburger;

35.   Defendant George Bloosom, MD, was Mary Martin's attending physician at Franciscan Care Center from April 8, 2016 through April 18, 2016, where he was negligent in evaluation and examination, medical care and treatment rendered to Decedent, failing to prescribe proper medications and oversee Staff, and failure to follow up with Decedent's care, all of which directly contributed to serious injuries and death of Mary Martin;

36.   Defendant Franciscan Care Center, where Mary Martin resided from April 8, 2016 to April 18, 2016, its agents and employees, were negligent in care and treatment of Mary Martin, for violations of healthcare regulations, and providing wrong and/or not providing and dispensing proper medications, harmful treatment as outlined previously, causing Decedent to sustain serious permanent injuries which directly

13.

contributed to the death of Mary Martin;

37.    Defendant, Mercy Healthcare Partners/St. Anne's Hospital, with whom Mary Martin was hospitalized from April 18, 2016 through April 21, 2017, its agents and employees were negligent in the care and treatment Mary Martin, supervising Staff and allowing actions which caused Mary Martin to be given fatal doses of Morphine, directly causing her death;

38.    On April 20, 2016, Defendant Shakil A. Khan, MD, at St. Anne's Hospital, was the Ordering Provider of overdoses of Morphine for Mary Martin, which was given by Jennifer L. Russell, RN, intravenously, approximately every 5 minutes,  PRN, as directed by Dr. Kahn, which directly resulted in the death of Mary Martin, (see Exhibit A);

39.    On on about April 7, 2016 through April 8, 2016, Defendant, Margaret Weisenburger, Guardian for Mary Martin, supervised and participated in decision-making for her care and treatment, as previously described, was instrumental in decisions and actions that directly resulted in the suffering and death of Mary Martin;

40.    As a result of the negligent care, treatment and death of Mary Martin, rendered by these Defendants involved with her care, and causing the Wrongful Death of Mary Martin, Plaintiffs have been damaged in an amount in excess of $25,000.00;

COUNT V

OBSTRUCTION OF JUSTICE

41.    The Lucas County Coroner, James R. Patrick, MD, Diane M. Scala-Barnett, MD, Robert B. Forney, Jr,. Ph.D., Therese Merchant, Investigator, and any other agents and employees of the Coroner, who are involved in failing to provide Plaintiff, Denise Martin, with repeatedlt requested items and reports, in their possession,

14.

regarding her Mother's death, which requests are fully discussed in a pleading. (See Exhibit "C", attached hereto and incorporated herein);

42. Moreover, in order to address recommendations of a forensic biologist who examined the Autopsy of Mary Martin from the LC Coroner, another lab needs to re-examine and test the blood and tissue samples for a more through determination. (See Affidavit marked as Exhibit "D" attached hereto and incorporated herein);

WHEREFORE, Plaintiffs demand judgment against Defendant's in excess of $25,000.00; for reasonable expenses for the funeral and burial of decendent; an award of exemplary and punative damages; for an award of attorney fees; for interest and costs as to each cause; and for such further relief which may be just and equitable in the premises.

Respectfully submitted,

Virginia M. Wall

JURY DEMAND

Plaintiff hereby demands a trial by jury.

Virginia M. Wall

15.